## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NOAH MORRIS,**

§
§
**Plaintiff,**
§
§
**v.**
§
§
**CITIZENS BANK,**
§
§
**Defendant.**
§
§

**FILED - GR**

February 2, 2026 1:57 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: J L  /2-J

**1:26-cv-358**
**Paul L. Maloney**
**United States District Judge**

## COMPLAINT

NOW COMES the Plaintiff, Noah Morris, himself pro se, hereby alleging the following
against the Defendant, Citizens Bank:

### NATURE AND ACTION

1.     This action is brought forth for the Defendants breach of the implied
covenant of good faith and fair dealing, intentional infliction of emotional distress (IIED),
defamation of character, and includes a string of action under the Consumer Credit
Protection Act. This complaint only reflects the Federal Law Allegations made by the
Plaintiff that bring the complaint above the speculative level of assumption that all of the
complaints allegations are true. *Bell Atlantic Corp v. Twombly, 550 U.S. 544, 545, 127 S.
Ct. 1955, 167 L. Ed. 2d 929 (2007).*

2.    This is an action for actual and statutory damages for Defendants violations of the Expedited Funds Availability Act ("EFAA") 12 U.S.C § 4001-4010 and 12 CFR Part 229.

3.    This is an action for actual and statutory damages for Defendants violations of the Equal Credit Opportunity Act ("ECOA") 15 U.S.C § 1691 et seq.

4.    This is an action for actual and statutory damages for Defendants violations of the Fair Credit Billing Act ("FCBA") 15 U.S.C § 1666 et seq.

5.    This is an action for actual and statutory damages for Defendants violations under the Michigan Regulation Collection Practices Act ("MRCPA").

6.    This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C § 1681 et seq.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction given there is a Federal Question.

8.    Venue and personal jurisdiction is proper in this District because Defendant transacts business within this District and the events giving rise to this claim occurred within this District.

## PARTIES

9.    Plaintiff is a consumer residing in Cedar Springs, Michigan.

10.    Defendant, Citizens Bank, is a popular financial services company located at One Citizens Plaza, Providence, RI 02903.

11.    Defendant is a creditor as that term is defined by Federal Law 15 U.S.C § 1691a(e).

12.    Defendant is a "furnisher" of credit information and is a financial institution or a person as defined by the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

13.    Defendant, Citizens Bank, is a regulated person as defined by Michigan Law 445.251g

14.    At all times relevant to this Complaint, Defendant acted through its agents employees, officers, members, directors, heirs, successors, assignees, principals, trustees, sureties, subrogees, representatives and insurers.

## FACTUAL ALLEGATIONS

15.    CITIZENS violated the EFAA, ECOA, FCBA, MRCPA, FCRA and is liable for invasion of privacy, discrimination, harassment, false and misleading information, breach of contract, defamation of character, and causing intentional infliction of emotional stress.

### Allegations of Plaintiffs checking account with Citizens (Defendant)

16.    In June of 2024, Plaintiff obtained a new credit card with Citizens Bank (Defendant).

17.    Plaintiff was immediately advertised a new checking account with Citizens Bank after activating his new card. The discrimination and abuse in this case starts with the opening of this checking account. Plaintiff has learned this year of the illegality/civil liability of Defendant's conduct pertaining to EFA Act violations.

18.    Plaintiff was excited about his credit card and opened the checking account with Defendant on July 23, 2024, where he made his first opening deposit of $9.

19.    Plaintiff knew he was receiving a settlement check soon and decided he was going to exercise his rights to use his new account with Citizens and decided to cash the check with Citizens Bank since he was using his new Citizens credit card and intended to use his new Citizens checking account in unison.

20.    Plaintiff was counting on cashing this check and needed/had plans for the funds and adjusted his personal bills and schedule around this check payment as Plaintiff had already liquidated the majority of his credit card with Citizens (Defendant) for personal reasons, so he needed/counted on the funds from his check for purchasing a financial credit product/package to build his credit. The credit product was on sale by 50% off because the woman selling the product was having a sale for her August birthday.

21.    On August 8th, 2024, Plaintiff received his settlement check and excitedly cashed the check electronically with his new account with Citizens (Defendant) by an online deposit and anticipated receiving his money.

22.    Citizens (Defendant) immediately flagged the check.

23.    Plaintiff worried because he knew it might take longer to receive the money and began to fear he wouldn't be able to pay his bills he made plans for, or to purchase the credit product he was counting on buying at a discount.

24.    Plaintiff immediately contacted Citizens (Defendant) inquiring about the investigation and was transferred to a supervisor. Plaintiff informed her of the legitimacy of the check and that he had information to immediately prove its validity, she put Plaintiff's information in their system and she told him what he provided would help expedite the investigation and that they would reach out to him.

25.     After one week, Plaintiff began struggling with his bills and began to worry because he would soon be unable to qualify for the credit product he was expecting to buy at a discount. Plaintiff called Citizens (Defendant) again to see how much longer his money would be held and got in contact with another supervisor who told him the information he provided was already in the system and that she would see if she could transfer him to one of the agents handling the investigation who could immediately take his information of the checks validity, but that agent was unable to take the call at that time, and Plaintiff was told he'd have to keep waiting.

26.     Plaintiff did not hear anything for another week until he got notification that his checking account was now closed and upon his inquiry that he couldn't create a bank account with Citizens again.

27.     Plaintiff called Citizens trying to figure out where his money was but the agents were unable to give him any information and Plaintiff waited until September 9 to finally receive a check with his money from Citizens, ultimately admitting to the checks legitimacy and the unreasonably and negligently prolonged investigation.

28.     The plaintiff missed the financial opportunity he had planned in August and had to make arrangements for earning income in August, a month he planned to spend with his daughter fully before she went back to school. Plaintiff believed and was made to feel he had no legal rights in this matter.

### Allegations of Plaintiffs credit card with Citizens (Defendant)

27.     Fast forward to July 13, 2025, Plaintiff went to make his Citizens credit card payment with his DCU checking account. Plaintiff normally made payments to his Citizens credit card with his CITI bank account and not the DCU account.

28.    Upon making the payment and getting confirmation of the payment being scheduled by the Citizens api (application program interface)(website) by a notification at the top of his phone, Plaintiff noticed afterwards that he hadn't received a confirmation sent to his email as normal and was confused why the Citizens api (website) had told him the payment had been processed when it seemed like it hadn't.

29.    Plaintiff, from his security instinct in not receiving the emailed payment confirmation, made the payment again but this time with the normal CITI account he had used to make payments most of the dates prior. This did create the confirmation email that confirmed payment. Without Plaintiffs anxiety that something was wrong with the Citizens website or checking his email, Plaintiff or any normal person would not have scheduled a second payment. Plaintiff was weary to schedule a second payment because he didn't want to have then made two payments.

30.    Plaintiff was no longer using his CITI account so he made sure to put $5 extra into it on top of the Citizens payment amount ($142) just in case, but an old $15 subscription charged the account over the Citizens payment amount that was owed.

31.    Plaintiff soon saw that his Citizens statement was non reflecting of a payment. Around this same time, Plaintiff received mail from Defendant (Citizens) telling him his credit card account was now closed.

32.    After this, Plaintiff was notified by a phone call of his payment not going through by a Citizens (Defendant) debt collector (or regulated person). Plaintiff explained what happened and was told by the agent to not worry because upon making his past due payment and next month's payment that they would reopen his credit card

because it was a mistake on behalf of Citizens. The debt collector told Plaintiff to call back as soon as he made the payments. This made Plaintiff feel relieved.

33.    The Plaintiff made both of the payments within two weeks and called back. He explained to the debt collector (regulated person) that he made the payments and was calling back as instructed so that his account could be reopened. The debt collector (Defendant)(Regulated person) transferred Plaintiff to an agent, Plaintiff explained what happened and why he was transferred. The agent told Plaintiff that opening his closed credit card account is not something they do at Citizens. The agent said they don't reopen credit card accounts. Plaintiff insisted he was being lied to because the debt collector had told him because it was an error by them (Citizens)(Defendant) that they indeed could reopen the account.

34.    Plaintiff escalated and was then transferred to another agent who told him they could reopen his credit card but would need a new hard inquiry. Plaintiff felt even more lied to because he was being told multiple/different things. Plaintiff refused a hard inquiry as it would damage his credit report and he would get denied anyway because his credit utilization is momentarily poor (credit cards maxed out).

35.    On August 12, 2025, Plaintiff sent a letter (Exhibit A) to the address in the credit card agreement for billing disputes. Plaintiff included his birthdate, last 4 of his ssn, last 4 of his account number, and his name and address so his account would be easily identifiable. Plaintiff set forth that the payment of $142 was not collected due to an error with the Citizens website, explaining how this was a mistake on Citizens (Defendants) behalf that caused an erroneous statement (billing error). The plaintiff received no answer to his dispute.

36.    Plaintiff had always maintained on time payments with his Citizens credit card and was discriminated upon in his dealings with Citizens.

37.    Plaintiff has suffered damages and applied for the Citizens credit card to begin with so he could build his credit with the account/tradeline and boost his available credit and eventually pay down the card to bring up his utilization so he can use the good tradeline on his personal credit to show for as a personal guarantor to obtain his first business loan.

38.    Now Plaintiffs credit is tarnished with this closed account which makes Plaintiff out to be irresponsible and unable to manage his credit. This Citizens credit card was Plaintiffs highest credit limit account which made it the most important.

39.    Plaintiff still makes his Citizens payments and has not missed one payment but he cannot receive any benefit to this account, Plaintiff can't use the credit he pays off every month, the interest rate is very high, and Plaintiff won't be able to show a good tradeline on his credit report as the account shows and reports as closed early which now has a negative effect on a business loan application.

40.    Due to the credit card account being closed and Plaintiff not being able to use the card, Plaintiff sometimes pays in the 60 day window rather than the first 30 days. He gets calls from the Defendant to "collect the debt" after the 30 day period of the 60 day window. Plaintiff demanded the agent for them to stop calling him because he's aware of his payment obligation period and she said she would put him on the do not call list.

41.    The defendant stopped calling momentarily but then resumed their calls a couple months later. Plaintiff answered one while he was driving for his commercial

work and he told the Defendant (acting as first party debt collector or regulated person) that it wasn't a good time to talk because he was driving for business but the debt collector insisted on continuing the conversation until she had all of Plaintiffs information and could hastily confirm that he would set up a payment date, despite that no payment date in the call became agreed upon because Plaintiff is aware of his credit obligation and tried to inform the agent for the Defendant he did not want the call that she insisted continuing.

42.     The defendant kept calling after this even twice on Christmas Eve. Recently when Plaintiff answered and told the agent to please stop calling him she told him that they could only reduce the calls to two times in seven days. The Plaintiff was able to then get this agent for Defendant to reveal to him (that she was concealing) that they would only completely stop calling him if he sent a cease and desist by writing which is contrary to what an agent for the Defendant told Plaintiff in the other call that they could/would stop contacting him by his verbal request. This is false and misleading information and it is deceptive especially because now Citizens (Defendant) has stopped calling completely by Plaintiffs verbal request and without him needing to send a written cease and desist. Citizens Bank (Defendants) collection department says a lot of false and misleading things.

## LAW AND MEMORANDUM

43.     Plaintiff seeks compensation for actual and punitive damages because a litigant can seek in addition to the statutory damage, compensatory, actual, and punitive damages. *Cortez v. Transunion, LLC, 617 F .3d 688 (3rd Cir. 2010): Kennedy v. Borden City Saving & Loan  Assoc., 747 F .2d 367 (6th Cir. 1984) Morgan v. New Yourk Life*

*Insurance Co., 559 F .3d 425, 443 (6th Cir. 2009) (*Affirming $500,000 award for non-economic damages*).*

44.    Knowingly and willfully, reporting information that should be removed as a matter of law gives rise to civil liability under the FCRA. *Comeaux v. Brown & Williamson Tobacco Co., 915 F .2d 1264 (9th Cir. 1990).* Showing inaccuracy is an essential element of claim under the FCRA. *Spence v. Trw, Inc., 92 F .3d 380 (6th Cir. 1996).*

45.    Any alleged agreement to arbitrate would be unconscionable. Citizens Bank (Defendant) has not followed and has broken their agreements and contracts. Plaintiff preserves his right to a jury trial in the event that Citizens Bank seeks to file a motion to compel arbitration to decide whether arbitration should proceed. *Taylor v. Pilot Corp., 995 F .3d 572 (6th Cir. 2020); Borch v. P.J. Cheese Inc., 861 F .3d 1338 (11th Cir. 2017); FAA 9 U.S.C 4.*

46.    Plaintiff is at risk of "present and future retaliation" by Citizens possibly seeking to intentionally violate any court rules in order to slander or further defame, degrade and put down Plaintiffs character in any way.

## COUNTS FOR DAMAGES

### COUNT I

### Checking Account Damage

### Common Law Negligence +

### Civil liability under the EFAA 12 U.S.C Ch. 41 & 12 CFR 229

47.    Defendant owed a duty of responsibility to exercise reasonable care to the Plaintiff as the customer. This is highlighted in the Defendants (Citizens) Personal Deposit Account Agreement. The Defendant breached this duty by failing to act with

reasonable or ordinary care. Defendant unreasonably initiated and delayed an investigation and Plaintiff promptly cooperated and reported relevant information to that investigation. Defendants' delay directly caused and worsened Plaintiffs damages by unreasonably closing his checking account and telling Plaintiff he could never open one with them again. Plaintiff suffered actual financial losses (inability to pay bills, loss of financial opportunity).

48.     *"12 U.S.C 4003 - Safeguard exceptions (a) New accounts - Notwithstanding section 4002 of this title, in the case of any account established at a depository institution by a new depositor, the following provisions shall apply with respect to any deposit in such account during the 30-day period (or such shorter period as the Board, jointly with the Director of the Bureau of Consumer Financial Protection, may establish) beginning on the date such account is established"*

*"( c ) Reasonable cause exception - (1) In general - In accordance with regulations which the Board, jointly with the Director of the Bureau of Consumer Financial Protection, shall prescribe, subsections (a)(2), (b), (c), and (e) of section 4002 of this title shall not apply with respect to any check deposited in an account at a depository institution if the receiving depository institution has reasonable cause to believe that the check is uncollectible from the originating depository institution. For purposes of the preceding sentence, reasonable cause to believe requires the existence of facts which would cause a well-grounded belief in the mind of a reasonable person. Such reasons shall be included in the notice required under subsection (f)."*

49.     Defendant initiated an investigation unreasonably that was prolonged with no reasonable cause to doubt the collectibility of a good check. Defendant did not have

a well-grounded reasonable belief based on facts for the investigation nor was the account used in any illicit, exploitative, or abusive manner for the Defendant to close Plaintiffs checking account and tell him he can never open an account with them again. The check was good and the money was ultimately returned to the Plaintiff. There is no reasonable cause for the Defendant to have believed the check is unpayable and to then permanently close his account. Plaintiff contacted and informed the Defendant multiple times that he could easily prove the legitimacy of the check by submitting qualifying private records to substantiate immediate evidence that would have aided a simple and expedited equitable decision in the investigation. This has caused harm and damage to the Plaintiff and makes the Defendant liable for their negligent investigation and failing to comply with the EFAA (Electronic Funds Availability Act.)

50.    "*12 U.S.C 4003 - Safeguard exceptions (a) New accounts - Notwithstanding section 4002 of this title, in the case of any account established at a depository institution by a new depositor, the following provisions shall apply with respect to any deposit in such account during the 30-day period (or such shorter period as the Board, jointly with the Director of the Bureau of Consumer Financial Protection, may establish) beginning on the date such account is established"*

*"(f) Notice of exception; availability within reasonable time - (1) In general - If any exception contained in this section (other than subsection (a)) applies with respect to funds deposited in an account at a depository institution—*

*(A) the depository institution shall provide notice in the manner provided in paragraph (2) of—*

*(i) the time period within which the funds shall be made available for withdrawal; and*

*(ii) the reason the exception was invoked;"*

51.    Plaintiff did not receive any notice on the time period his funds would become available or any reasons as to why the exception was invoked.

52.    Defendant acts without reasonable cause, is discriminatory, and has caused damage to the Plaintiff. Defendant caused Plaintiff to feel hopeless, he had to change his financial plans to pay bills, lost opportunity and thought there was nothing he could do about it. Plaintiff has discovered this year after dealing with the similar credit card damages caused by Defendant that what the Defendant did in regards to his check and checking account is illegal. Defendant is liable for their negligent investigation and failing to comply with the EFAA (Electronic Funds Availability Act.)

## COUNT II

### Credit card damage

### Violation of the equal credit opportunity act 15 U.S.C 1691(a)(3)

53.    *"15 U.S.C 1691 Prohibited discrimination; reasons for adverse action (a)(3) states, it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction– (3) because the applicant has in good faith exercised any right under the Consumer Credit Protection Act."*

54.    Plaintiff, after receiving his statement and then being notified of his credit card accounts closing, sent notice of the billing issue informing the Defendant of the error caused by their application program interface (website). The amendment of the Fair Credit Billing Act prohibits creditors from taking actions that adversely affect the

consumers credit standing until an investigation is completed, and affords other protection during disputes. Plaintiff set forth that the account closure was caused by the Defendants online website issues which created an inaccurate account statement.

55.    The Defendant never investigated or even answered Plaintiff's dispute in regards to the error that created the adverse action (credit card account closure) (as defined by 15 U.S.C 1691 (d)(6)) taken against the Plaintiff. Plaintiff informed the Defendant he was working hard on his credit and exercised his right under the Consumer Credit Protection Act to dispute the billing error. Plaintiff also informed Defendant in his dispute of the way they damaged him with his checking account last year when he went to cash a check. Defendant discriminated against Plaintiff by not looking into Plaintiff's dispute that he exercised under his federally protected consumer credit protection rights. They ignored Plaintiff, made false and misleading statements, and allowed him to remain adversely affected by not granting his account as open. The closing of Plaintiffs credit card is discriminatory adverse action.

## COUNT III

### Violations of the Fair Credit Billing Act 15 U.S.C 1666

56.    *"1666. Correction of billing errors - (a) Written notice by obligor to creditor; time for and contents of notice; procedure upon receipt by creditor*

*If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice (other than notice on a payment stub or other payment medium supplied by the creditor if the creditor so stipulates with the disclosure required under section 1637(a)(7) of this title) from the obligor in which the obligor—*

   *(1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,*

   *(2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and*

   *(3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,"*

*the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct—*

   *(A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and*

   *(B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either—*

   *(i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or*

   *(ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor*

*believes the account of the obligor was correctly shown in the statement and, upon*

*request of the obligor, provide copies of documentary evidence of the obligor's*

*indebtedness. In the case of a billing error where the obligor alleges that the*

*creditor's billing statement reflects goods not delivered to the obligor or his designee*

*in accordance with the agreement made at the time of the transaction, a creditor*

*may not construe such amount to be correctly shown unless he determines that*

*such goods were actually delivered, mailed, or otherwise sent to the obligor and*

*provides the obligor with a statement of such determination.*

*After complying with the provisions of this subsection with respect to an alleged billing*

*error, a creditor has no further responsibility under this section if the obligor continues to*

*make substantially the same allegation with respect to such error.*

**(b) Billing error**

*For the purpose of this section, a "billing error" consists of any of the following:*

*(1) A reflection on a statement of an extension of credit which was not made to the*

*obligor or, if made, was not in the amount reflected on such statement.*

*(2) A reflection on a statement of an extension of credit for which the obligor*

*requests additional clarification including documentary evidence thereof.*

*(3) A reflection on a statement of goods or services not accepted by the obligor or*

*his designee or not delivered to the obligor or his designee in accordance with the*

*agreement made at the time of a transaction.*

*(4) The creditor's failure to reflect properly on a statement a payment made by the*

*obligor or a credit issued to the obligor.*

*(5) A computation error or similar error of an accounting nature of the creditor on a statement.*

*(6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.*

*(7) Any other error described in regulations of the Bureau."*

57.    Plaintiff identified his identity and the account, that the amount in controversy was $142, that the error was a Citizens website malfunction caused a payment to not go through (billing error/statement error) by creating an inaccurate payment verification (creditors failure to reflect properly on a statement a payment made by the obligor or a credit issued by the obligor) which caused damage to the Plaintiff by Citizens (Defendant) closing his credit card account.

## COUNT IV

### Violations Michigan Legislature 445.252 (MRCPA)

58.    *"MCL - Section 445.251 Definitions.*

*(1) As used in this act:*

*(g) "Regulated person" means a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including any of the following:*

*(i) A regular employee who collects accounts for 1 employer if the collection efforts are carried on in the name of the employer.*

*(ii) A state or federally chartered bank that collects its own claim.*

*(iii) A trust company that collects its own claim.*

*(iv) A state or federally chartered savings and loan association that collects its own claim.*

*(v) A state or federally chartered credit union that collects its own claim.*

*(vi) A licensee under the regulatory loan act, 1939 PA 21, MCL 493.1 to 493.24.*

*(vii) A business that is licensed by this state under a regulatory act that regulates collection activity.*

*(viii) An abstract company that is engaged in an escrow business.*

*(ix) A licensed real estate broker or salesperson if the claim the broker or salesperson is collecting is related to or in connection with the broker's or salesperson's real estate business.*

*(x) A public officer or a person that is acting under a court order.*

*(xi) An attorney who is handling a claim or collection on behalf of a client and in the attorney's own name."*

59.    Defendant is a regulated person under this title (MCL 445.251)

60.    **Prohibited acts (a)** Communicating with a debtor in a misleading or deceptive manner, such as using the stationary of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau.

61.    The Defendant made inaccurate, misleading, untrue and deceptive statements about reopening Plaintiffs credit card account, and about their polices, and through their agent, acting within the scope of their authority, violated this section.

62.    **Prohibited acts (e)** "Making an inaccurate, misleading, untrue or deceptive statement or claim in communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt."

63.    The Defendant made inaccurate, misleading, untrue and deceptive statements about reopening Plaintiffs credit card account, and about their polices, and through their agent, acting within the scope of their authority, violated this section.

64.    **Prohibited acts (n)** Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor.

65.    The Defendant used harassing methods to collect their debt by calling Plaintiff at unreasonable times such as at work, Christmas Eve, and after Plaintiff asked them to stop, and through their agent, acting within the scope of their authority, violated this section.

## COUNT V

### Violation of the Fair Credit Reporting Act 15 U.S.C 1681

66.    "**15 U.S.C 1681s-2** (a) Duty of Furnishers of Information to Provide Accurate Information (1) Prohibition (A) Reporting information with actual knowledge of errors - A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate. (B) Reporting information after notice and confirmation of errors - A person shall not furnish information relating to a consumer to any consumer

*reporting agency if (i) the person has been notified by the consumer, at the address*
*specified by the person for such notices, that specific information is inaccurate; and (ii)*
*the information is, in fact, inaccurate."*

67.    Plaintiff informed the Defendant that the credit card account non payment
was inaccurate and that the reason for his account closure was the fault of the
Defendant. Defendant still reports the account as closed but this is inaccurate
information because the account should not be closed because that closure is based on
inaccurate information. It is an error on the Defendant's part and now they are causing
grave harm to the Plaintiff by reporting a closed account which makes him out to be
irresponsible to other lenders. (This credit reporting is based on information that was
developed from inaccurate information derived from a Citizens (Defendant) website
error)

68.    The Defendant has violated this section by continuing to report inaccurate
and damaging information on the Plaintiff. Plaintiff notified the Defendant at their
specified address of the specific inaccurate information that is, in fact, false and
inaccurate.

## CONCLUSION

69.    Plaintiff has suffered harm and damages at the hands of the Defendant as
this harm was one that was specifically identified and intended to be protected against
on behalf of a consumer, such as the Plaintiff, by Congress.

70.    Plaintiff ask that his document be liberally construed under *Haines v.*
*Kerner, 404 U.S. 519 (1972)*. Pro se litigants can be excused from full compliance with
technical procedural rules. *Norfleet v. Walker, 684 F .3d 688 (7th Cir. 2012)*. A court

should consider well pleaded facts despite litigants unfamiliarity with pleading requirements. See e.g. *Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007): Smith v. Smith, 589 F .3d 736 (4th Cir. 2009); Neitzke v. William, 490 U.S. 319 (1989).*

71.    Defendant failed to treat Plaintiff with care, induced negligent investigations, discriminated, used false and misleading information, and continues to report an account based on inaccurate information. If any parties refuse to remove information that is harmful such as inaccurate and or debts that have not been legally validated it is defamation of character. *Cushman v. TransUnion Corporation, 115 F.3d 220 (3rd Cir. 1997).*

72.    Defendant's failure to stop reporting inaccurate information is embarrassing and humiliating to the Plaintiff as it creates a false impression to users of his credit report that he is irresponsible.

73.    The defendant intentionally inflicts emotional distress and invasion of privacy and it injures the Plaintiffs well being and his family.

74.    Plaintiff reserves his right to raise any additional claims, pleadings and documents in regards to this complaint, and does not waive any of his rights, claims, and defenses.

75.    To date, as a direct cause of the Defendant's failure to honor statutory obligations, the Plaintiff continues to suffer from damages caused by the Defendant, including a degraded credit report.

**WHEREFORE,** given these reasons, Plaintiff **PRAYS** that this Honorable Court **GRANT** and award judgment against the Defendant, Citizens Bank, for statutory damages, so

that Plaintiff is made whole, order Defendant to pay any exemplary damages, and any

other relief Plaintiff is entitled to, such as opening a credit card account.

Respectfully Submitted,

Noah Morris
In Pro Se
121 South Street Apt 5
Cedar Springs, MI 49319
Tel. 616-644-8296
morrisnoah22@yahoo.com

Dated: January 28, 2026

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NOAH MORRIS,**                              §
                                             §
    **Plaintiff,**                           §
                                             §
**v.**                                       §
                                             §
**CITIZENS BANK,**                           §
                                             §
    **Defendant.**                           §
                                             §

---

### PLAINTIFFS NOTICE FOR DEMAND FOR JURY TRIAL

Now comes, Noah Morris, in Pro Se and submits this notice for right to a jury trial

pursuant to Federal Rules Civil Procedure 38, in regards to his complaint against

Citizens Bank.

    **WHEREFORE,** for the reasons discussed in this notice Plaintiff demands a

jury trial.

Respectfully Submitted,

Noah Morris, Pro Se
121 South Street Apt 5
Cedar Springs, MI 49319
Tel. 616-644-8296
morrisnoah22@yahoo.com
Dated January 28th, 2026

**FROM:**

Noah Morris
121 South Street Apt 5
Cedar Springs, MI 49319

**TO:**

Clerk
399 Federal Building
110 Michigan St. NW
Grand Rapids, MI 49503

Retail





49503

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
ROCKFORD, MI 49341
JAN 28, 2026

**$3.28**

S2324M503583-5

**Utility Mailer
10 1/2" x 16"**

ReadyPost